GEORGE L. GREENE, PLAINTIFF, v. CHARLOTTE CHEMICAL LABORA-TORIES, INC., A CORPORATION, AND SUGGS WRECKING & REMOVAL COMPANY, INC., A CORPORATION, DEFENDANTS.

(Filed 24 May, 1961.)

**1. Pleadings § 34—**

Allegations are irrelevant when evidence in support of them is not competent.

**2. Same—**

A party is entitled to have striken from the pleadings irrelevant allegations which are prejudicial to him.

**3. Same: Negligence § 20—**

In an action against two tort-feasors, allegations in the answer of one referring to and attaching as an exhibit a contract under which the second tort-feasor was obligated to carry liability insurance, are properly striken on motion of plaintiff and the second tort-feasor, since the existence of liability insurance is irrelevant to the cause of action for negligence and is prejudicial.

**4. Same: Indemnity § 3—**

In an action against two defendants to recover for negligent injury, allegations in the answer of one defendant referring to and attaching as an exhibit a contract of the second defendant obligating him to indemnify the first defendant from all losses resulting from the second defendant's operation and control of the premises upon which the injury occurred, is properly striken on motion of plaintiff and the second defendant, since the indemnity agreement is not germane to plaintiff's cause but is a matter of concern only between defendants *inter se.*

**5. Pleadings § 8—**

One defendant is not entitled to file a cross-action against a codefendant when such cross-action is independent of, and irrelevant to, the action stated in the complaint.

**6. Pleadings § 34:  Negligence § 20—**

In an action against two defendants to recover for negligent injury, parts of a contract between the defendants which disclose the authority of one to enter upon and control the premises upon which the injury occurred, are competent, and are properly alleged by the defendant owning the premises, but other parts of the contract, relating to liability insurance and indemnity, are irrelevant, and therefore the fact that the complaint also refers to relevant portions of the contract does not entitle the second defendant to incorporate the entire contract in his pleading.

**7. Pleadings § 2—**

A pleading should contain allegations of ultimate relevant facts and not evidential facts. G.S. 1-222.

**8. Pleadings § 34:  Negligence § 20—**

In an action to recover for negligence, order of the court striking allegations in the answer of one defendant that the other defendant had failed to comply with the terms of a written contract between them, will not be disturbed, since the allegation is of a mere conclusion and the failure to perform contractual obligations is never a tort unless it is also an omission to perform a legal duty.

**9. Negligence § 10—**

The doctrine of last clear chance may be asserted only by a plaintiff against the defendant and may not be asserted as between defendants sought to be held liable as joint *tort-feasors.*

**10. Pleadings § 34:  Torts § 4—**

In an action against two defendants to recover for negligent injury, it is not error for the court to strike from the answer of one defendant allegations that the other had the last clear chance and that therefore its negligent acts were the sole proximate cause of the injury.

**11. Pleadings §§ 7. 19—**

While ordinarily one defendant may not demur to a defense made by a codefendant, when the defense is not available as against plaintiff, and the allegations thereof are prejudicial to the first defendant, his demurrer thereto is properly sustained.

**12. Negligence § 9—**

Where one *tort-feasor* is passively negligent and the other is guilty of positive acts of negligence, both are liable to the person injured if the negligence of each is a contributing cause of the injury, but as between themselves, the party exposed to liability by reason of the active negligence of another may recover of such other under the doctrine of primary and secondary liability, and such defense is germane to

plaintiff's cause of action and defendants are entitled to an adjudication of their rights *inter se* in plaintiff's action. G.S. 1-222.

**13. Pleadings § 7—**

A defendant may plead as many defenses as he has, and it is not required that the defenses be consistent with each other.

**14. Same: Torts § 6—**

Where there is an express contract between defendants that one should indemnify the other for any loss or damages arising out of the performance of the contract, the express contract precludes the application of the doctrine of primary and secondary liability, which is predicated upon an implied contract.

**15. Same: Pleadings § 24: Negligence § 20—**

Where plaintiff alleges that both defendants were actively negligent, neither is entitled to indemnity from the other, and the doctrine of primary and secondary liability does not arise, nor is the doctrine applicable when one defendant alleges sole responsibility on the part of his codefendant, and in such instance order striking from the answer of one defendant allegations of primary and secondary liability will not be disturbed.

**16. Torts § 6—**

Where plaintiff elects to sue both joint *tort-feasors* and alleges active negligence on the part of both which concurred in producing the injury, each is entitled to contribution from the other if there is a judgment of joint and several liability against them, but during the course of the trial each is a defendant as to the plaintiff only, and neither may preclude the dismissal of the action against the other if plaintiff fails to make out a *prima facie* case against the other, and allegations and prayer for contribution contained in the answer of one are properly striken on motion of the other. G.S. 1-240.

**17. Pleadings § 34: Courts § 6—**

Where one judge of the Superior Court has refused motion to strike certain allegations from a pleading and no appeal is taken therefrom, another judge of the Superior Court is without jurisdiction to allow motion to strike the identical allegation from the amended pleading, since one Superior Court judge may not modify or change an order of another Superior Court judge affecting a substantial right.

**18. Appeal and Error § 1—**

Where motion to strike certain allegations from a pleading is erroneously denied by one Superior Court judge but later allowed by another Superior Court judge, the Supreme Court, in the exercise of its supervisory jurisdiction, may permit the second order to stand notwithstanding it was entered without authority, in order that the case may be tried on the correct theory without unnecessary delay. Constitution of North Carolina, Art. IV, Sec. 8.

BOBBITT, J., dissenting in part.

PARKER and RODMAN, J.J., concur in dissent.

On *certiorari* from *Hooks, S.J.,* November 14, 1960 Special Term of MECKLENBURG.

Action to recover damages for personal injuries sustained by plaintiff by reason of the alleged actionable negligence of defendants.

The court struck some of the allegations from the complaint on motion of defendants. Plaintiff was permitted to strike other allegations on his own motion. The allegations of the complaint, excluding those deleted, are in substance as follows (numbering ours):

(1) Plaintiff on 9 July 1959 was a regular fireman of the City of Charlotte assigned to Fire Station No. 2.

(2) Defendant, Charlotte Chemical Laboratories, Inc., (hereinafter referred to as "Laboratory"), was engaged in the manufacture, storage and sale of chemicals. It owned a three-story building on Templeton Avenue in the City of Charlotte. In 1956 it moved its business to a new location on Pineville Road. From July 1956 to July 1959 it had certain chemicals stored in tanks in the building on Templeton Avenue.

(3) Defendant, Suggs Wrecking & Removal Company, Inc., (hereinafter referred to as "Suggs") was in the business of demolition of various types of old buildings. From December 1958 to 9 July 1959 it was engaged in dismantling and demolishing the building on Templeton Avenue pursuant to a contract with Laboratory. During demolition Laboratory removed from the building various tanks and other equipment.

(4) On the first floor of the three-story building Laboratory had a steel tank, 6 feet long, 3 feet wide, and 4 feet deep. In this tank it had a quantity of "metallic sodium which was stored under kerosene or other petroleum substance." The tank was covered by a sheet of metal. There was a hole in the metal sheet, 20 inches square, covered by a loosely fitting hinged metal lid. Within 8 months preceding 9 July 1959 Laboratory inspected the contents of the tank and discovered that some of the sodium had deteriorated. Laboratory advised that it would remove the tank and instructed Suggs not to disturb it.

(5) Suggs removed the roof and floors of the building above the first floor, and the tank was exposed to the elements. On 9 July 1959, while Suggs was engaged in demolishing the building, it began to rain. Smoke began to arise from the tank, increasing in proportion to the amount of rain. About 3:00 P.M. Suggs notified Laboratory. Suggs was advised to keep his employees away from the tank. Two officials of Laboratory, who were chemical engineers, came to the building and observed the tank from a distance of about 50 feet. The rain was heavy and the tank was steaming and smoking. The chemical

engineers departed and, in doing so, passed directly in front of Fire Station No. 2 where plaintiff was on duty. The fire station is about a block from the building and tank. Suggs' employees promptly left the building.

(6) The tank caught fire about 4:00 p.m. A fire alarm was turned in. The firemen from Station 2, including plaintiff, answered the alarm. They discovered the burning tank and smelled the odor of kerosene. Under orders from a superior, plaintiff attached a fog application nozzle and sprayed the burning tank. Fog spray is the customary application for extinguishing a petroleum fire. The firemen did not know that the tank contained metallic sodium, and did not know the peril involved when this substance is exposed to water. It was still raining heavily. While plaintiff was spraying the tank it exploded violently and plaintiff was seriously injured.

(7) Metallic sodium oxidizes when exposed to air, and when it comes in contact with water it generates heat and releases explosive gases.

(8) Defendants knew, or in the exercise of reasonable care should have known, the perilous nature of metallic sodium when exposed to air and water. Notwithstanding, defendants negligently maintained the tank, exposed it to the elements, took no measures to correct the condition and remove the peril upon discovery that the tank was smoking and steaming, gave no warning or notice to the public, the fire department or plaintiff of the peculiar danger involved, and abandoned the premises realizing the nature of the peril would not be known and understood by the fire department or others who might be in the vicinity of the tank.

Suggs and Laboratory filed separate answers. On motion of plaintiff and Suggs the court struck some of the allegations from Laboratory's answer and permitted it to file an amended answer.

Laboratory's amended answer, part in summary and part verbatim, is as follows:

Plaintiff's allegations of negligence are denied. Two officials of Laboratory, chemical engineers, did go to the building on Templeton Avenue 9 July 1959 and observe that the tank was steaming. A written contract between Laboratory and Suggs is referred to, made a part of the amended answer, and a copy is attached and marked "Exhibit A."

Exhibit A is summarized as follows:

Suggs agrees to demolish the building on Templeton Avenue, as an independent contractor and not subject to the control of Laboratory. Suggs agrees to carry liability insurance in specified amounts, and to protect Laboratory from liability for damages and injuries

arising from the demolition. Suggs agrees to carry workmen's compensation insurance to protect its employees. Laboratory retains ownership of all personal property on the premises, including tanks and mixers, with right to remove them. Suggs agrees to give two weeks notice before requiring the removal of personal property. Suggs is to have all materials from the building itself as sole compensation for the demolition, and is to remove the materials and leave the premises in neat order. "Wrecker (Suggs) agrees to hold owner (Laboratory) harmless from any and all loss or liability of any nature in connection with the demolition of said building(s) and any of its activities in connection therewith." Contract executed 15 December 1958.

Laboratory sets up a number of affirmative defenses, among them SEVENTH FURTHER ANSWER AND DEFENSE as follows:

1. Prior to December 1958 Laboratory owned the building on Templeton Avenue.

"2. That on or about December 15, 1958, this answering defendant and the co-defendant, Suggs Wrecking & Removal Company, Inc., entered into a written agreement providing for the demolition of the aforesaid building or buildings by the said co-defendant, Suggs Wrecking & Removal Company, Inc., a copy of which contract is hereto attached and made a part hereof and which has been heretofore identified as Exhibit A.

"3. That pursuant to the terms and provisions of said written agreement, the co-defendant, Suggs Wrecking & Removal Company, Inc., subsequent to the execution of the aforesaid agreement, entered onto the aforesaid premises located on Templeton Avenue.

"4. That on the occasion complained of, the premises herein involved were in the exclusive control and possession of the co-defendant, Suggs Wrecking & Removal Company, Inc., pursuant to the terms and provisions of said written agreement."

5(a), (b) & (c). If the tank contained dangerous substances and chemicals, which is denied, Suggs was negligent in the following respects: It knew or should have known that the tank contained such substances and chemicals; it negligently permitted the tank to be exposed to the elements and took no precaution to correct the dangerous condition; it observed that the tank was undergoing a chemical change, failed to take action to prevent an explosion, failed to give notice of the danger, and departed from the premises realizing the hazard to others if no warning was given.

"5(d). That said co-defendant failed to exercise toward the plaintiff reasonable care consistent with the circumstances then and there existing upon the premises herein involved; and that the said co-

defendant negligently failed to comply with the terms and provisions of the written agreement."

5(e), (f), (g), (h) & (i). Suggs failed to exercise reasonable care in maintaining the tank and created an extra hazard, failed to notify plaintiff and the fire department of the contents of the tank and their chemical nature, abandoned the premises when it knew there was imminent danger of an explosion and without taking steps to prevent explosion, and removed the lid from the tank and removed a part of the contents without notifying Laboratory.

6. The negligence of Suggs was the sole proximate cause of plaintiff's injuries.

7. The negligence of Suggs intervened and insulated the negligence, if any, of Laboratory.

"8. That if it should be found that this answering defendant was negligent herein, which is expressly denied, the said co-defendant, Suggs Wrecking & Removal Company, Inc., nevertheless had the last clear chance of avoiding the occurrence complained of, and because of same, its negligent acts were the sole proximate cause of the damages sustained by the plaintiff.

"9. That if it should be found that this answering defendant was negligent herein, which is specifically denied, the co-defendant, Suggs Wrecking & Removal Company, Inc., is primarily liable to the plaintiff, and should the plaintiff recover any judgment against this answering defendant, then this answering defendant is entitled to be indemnified by the said Suggs Wrecking & Removal Company, Inc., for any damages which may be awarded against this answering defendant.

"10. That without waiving any of the aforementioned defenses, but specifically relying upon them, this answering defendant alleges that if it was negligent on the occasion complained of, which is emphatically denied, then and in that event the wrongful and negligent acts and omissions of the co-defendant, Suggs Wrecking & Removal Company, Inc., contributed to and was one of the proximate causes of any damages sustained by the plaintiff and that the said co-defendant, Suggs Wrecking & Removal Company, Inc., is jointly and concurrently liable for said damages, if any, together with this answering defendant under the laws of the State of North Carolina, and particularly G.S. 1-240."

Prayer: 1. That the action be dismissed as to Laboratory. "2. Alternatively, for contribution from the defendant," Suggs. 3. That the costs be taxed against Suggs. 4. For such other and further relief as to the court may seem just and proper.

On motion of plaintiff and defendant Suggs the court struck from the amended answer Exhibit A and paragraph 2 of the Seventh Fur-

ther Answer and Defense. On motion of Suggs the court struck paragraphs 3, 4, 5(d), 9 and 10 of the Seventh Further Answer and Defense and paragraph 2 of the prayer for relief. And the court sustained Suggs' demurrer *ore tenus* to paragraph 8 of the Seventh Further Answer and Defense.

Defendant Laboratory petitioned this Court for *certiorari*. The writ was granted 7 February 1961.

Defendant Laboratory assigns errors.

*Uzzell and Dumont; Craighill, Rendleman & Clarkson for defendant Charlotte Chemical Laboratories, Inc., appellant.*

*William T. Grist; Warren C. Stack; and William E. Graham, Jr., for plaintiff, appellee.*

*Clayton & London; Pierce, Wardlow, Knox & Caudle for defendant Suggs Wrecking & Removal Company, Inc., appellee.*

MOORE, J.  Five questions are here presented for determination.

(1) Did the court below err in striking from the amended answer of defendant Laboratory Exhibit A (the contract between Suggs and Laboratory) and the references thereto contained in paragraphs 2, 3, 4 and 5(d) of the Seventh Further Answer and Defense?

The provisions of the contract requiring Suggs to carry liability insurance for the protection of Laboratory are not relevant or material to plaintiff's cause of action or to any defense available to Laboratory. Any reading of these provisions or reference thereto in the presence of the jury would, over objection, constitute prejudicial error. The fact that defendants in a negligence action are protected by liability insurance can throw no light on the question of negligence or other circumstances of the accident and is inadmissible in evidence. Stansbury: North Carolina Evidence, s. 88, p. 163. Nothing should remain in a pleading, over objection, which is incompetent to be introduced in evidence. *Daniel v. Gardner*, 240 N.C. 249, 251, 81 S.E. 2d 660. A policy of liability insurance is for the protection and indemnity of those insured by it, and in an action by an injured party against insured all references to such insurance is prejudicial, and all such references should be stricken from the pleadings. *Jordan v. Maynard*, 231 N.C. 101, 103, 56 S.E. 2d 26.

The contract, Exhibit A, not only requires Suggs to carry liability insurance for Laboratory's protection but specifies minimum limits. If the insurance is injected into the case, it can conceivably prejudice both plaintiff and Suggs. A party to an action is entitled to have stricken irrelevant matters which are prejudicial to him. *Council v.*

*Dickerson's, Inc.,* 233 N.C. 472, 476, 64 S.E. 2d 551; *Patterson v. R. R.,* 214 N.C. 38, 42, 198 S.E. 364

Furthermore, Suggs' agreement to hold Laboratory "harmless from any and all loss or liability of any nature in connection with the demolition of said buildings and any of its activities in connection therewith" is a matter which concerns Suggs and Laboratory only. Plaintiff is not privy thereto. Therefore, it is not germane to plaintiff's cause of action, and the determination of the rights and liabilities of defendants with respect to this agreement of indemnity is not necessary to a conclusion of plaintiff's cause of action. Only matters relevant to the original or primary action in which all parties have a community of interest may be litigated. *Wrenn v. Graham,* 236 N.C. 719, 721, 74 S.E. 2d 232; *Montgomery v. Blades,* 217 N.C. 654, 656, 9 S.E. 2d 397.

In *Clark v. Freight Carriers,* 247 N.C. 705, 102 S.E. 2d 252, an original defendant set up a cross-action against an additional defendant and alleged an implied contract to indemnify original defendant with respect to injuries to original defendant's employees. The trial court allowed the motion of additional defendant to strike the cross-action. This Court affirmed the ruling and said: ". . . it was discretionary with the trial judge as to whether or not . . . (original defendant) would be permitted to litigate its claim under the implied contract of indemnity against (additional defendant) in this action."

In *Gaither Corp. v. Skinner,* 238 N.C. 254, 77 S.E. 2d 659, the owner of a building sued his contractor for breach of contract because of defects in a roof. Contractor sought to join his subcontractor (who had installed the roof) as an additional party defendant, on the ground that the subcontractor had failed to do the work according to specifications and was therefore liable to the owner and contractor. Contractor asked for recovery over against subcontractor. The trial court refused to make the subcontractor an additional party defendant. This Court sustained the ruling of the trial court and declared: "The plaintiff has elected to pursue his action against the contractor with whom he contracted in order to recover damages for an alleged breach of that contract, and plaintiff should be permitted to do so without having contested litigation between the contractor and his subcontractor projected into the plaintiff's lawsuit." Accord: *Board of Education v. Deitrick,* 221 N. C. 38, 18 S.E. 2d 704.

In *Eledge v. Light Co.,* 230 N.C. 584, 55 S.E. 2d 179, the original defendant set up a cross-action based on an indemnity contract against additional defendants. This Court affirmed the ruling of the trial court in striking the cross-action.

A cause of action independent of and unrelated to the original and primary action may not be litigated in the latter action. *Clothing Store v. Ellis Stone & Co.*, 233 N.C. 126, 131, 63 S.E. 2d 118.

Laboratory contends that it has the right to set out the contract in full inasmuch as the contract is referred to in the complaint. The reference in the complaint is only for the purpose of explaining the presence of Suggs on the premises. Portions of a contract may be relevant and competent, and portions immaterial and incompetent, in a suit not based on the contract. A pleading should contain allegations of ultimate relevant facts, not evidential facts. G.S. 1-222. Even in a suit on a contract, the contract need not be set out in full in the pleadings. *Wilmington v. Schutt*, 228 N.C. 285, 45 S.E. 2d 364.

In the instant case relevant parts of the contract may be pleaded and offered in evidence, but not irrelevant and prejudicial provisions. The portions of the contract which tend to explain Suggs' presence and activities on the premises of Laboratory on Templeton Avenue are competent and material, also the portion tending to show Laboratory's ownership of and relation to the premises and property. For this reason the allegations of paragraphs 3 and 4 of the Seventh Further Answer and Defense are permissible and should not have been stricken. We express no opinion as to whether or not the facts alleged in these paragraphs conform to pertinent terms of the contract.

Paragraph 5(d) of the Seventh Further Answer and Defense contains a mere conclusion of the pleader, that Suggs "negligently failed to comply with the terms and provisions of the written contract." The Seventh Further Answer and Defense fails to state any facts upon which the conclusion is based. Furthermore, an omission to perform a contractual obligation is never a tort unless such omission is also the omission of a legal duty. *Council v. Dickerson's, Inc., supra; Insurance Association v. Parker*, 234 N.C. 20, 23, 65 S.E. 2d 341.

(2) Did the court err in sustaining defendant Suggs' demurrer *ore tenus* to defendant Laboratory's plea (paragraph 8 of the Seventh Further Answer and Defense) that Suggs had the "last clear chance" to avoid the accident and injury to plaintiff?

The doctrine of last clear chance cannot be invoked as between defendants concurrently negligent. 38 Am. Jur., Negligence, s. 227, p. 912. The doctrine arises only when plaintiff is guilty of contributory negligence, and one defendant may not resist recovery by plaintiff on the ground that a co-defendant had the last clear chance to avoid the accident. *Taylor v. Rierson*, 210 N.C. 185, 189, 185 S.E. 627. The doctrine has application only as between plaintiff and a defendant. The doctrine as applied in this jurisdiction is defined and explained in

*Irby v. R. R.*, 246 N.C. 384, 391, 98 S.E. 2d 349; and *Ingram v. Smoky Mountain Stages, Inc.*, 225 N.C. 444, 448, 35 S.E. 2d 337.

Under the facts as alleged in the instant case the last clear chance doctrine is not available, even to plaintiff. It is certainly not a proper pleading for defendant Laboratory since it has not set up a counterclaim. "Viewed as a phase of the principle of proximate cause, the doctrine of last clear chance negatives an essential element of contributory negligence by rendering plaintiff's negligence a mere condition or remote cause of the accident." 38 Am. Jur., Negligence, s. 216, p. 903.

Laboratory contends that the allegation of "last clear chance" is an affirmative defense and Suggs is in no position to question it. As already stated, it does not arise in this case. But, as Laboratory erroneously seeks to apply it, the plea proposes to place responsibility on Suggs and to relieve Laboratory. It is true that "a mere defense made by one co-defendant is not subject to demurrer by the other defendant . . . ." *Bargeon v. Transportation Co.*, 196 N.C. 776, 777, 147 S.E. 299. But an irrelevant allegation by one defendant may be stricken by a co-defendant when prejudicial to the latter. *Council v. Dickerson's, Inc., supra.*

The court properly sustained the demurrer *ore tenus.*

(3) Did the court err in striking paragraph 9 of the Seventh Further Answer and Defense in which defendant Laboratory alleges that its negligence, if any, imposes only secondary liability and that defendant Suggs is primarily liable?

Where one joint *tort-feasor* is only passively negligent, but is exposed to liability through the positive acts and actual negligence of the other, the parties are not in equal fault as to each other, though both are equally liable to the injured party. Where one does the act which produces the injury, and the other does not join in the act, but is thereby exposed to liability and required to pay damages, the latter may recover against the principal delinquent, and the court will inquire into the real delinquency and place the ultimate liability upon him whose fault was the primary cause of the injury. *Johnson v. Asheville*, 196 N. C. 550, 553, 146 S.E. 229. See also *Kimsey v. Reaves*, 242 N.C. 721, 89 S.E. 2d 386; *Bost v. Metcalfe*, 219 N.C. 607, 14 S.E. 2d 648. The inquiry as to primary and secondary liability, when properly pleaded and supported by evidence, is germane to plaintiff's cause of action. *Clothing Store v. Ellis Stone & Co., supra.* The entry of judgment fixing primary and secondary liability as between joint *tort-feasors* is sanctioned by statute G.S. 1-222. *Bell v. Lacey*, 248 N.C. 703, 705, 104 S.E. 2d 833; *Bowman v. Greensboro*, 190 N.C. 611, 130 S.E. 502.

A defendant may plead as many defenses as he has, and it is not required that the defenses be consistent with each other. *Freeman v. Thompson,* 216 N.C. 484, 5 S.E. 2d 434.

"The doctrine of primary-secondary liability is based upon a contract implied by law. *Hunsucker v. Chair Co.,* 237 N.C. 559, 75 S.E. 2d 768. There can be no implied contract where there is an express contract between the parties in reference to the same subject matter. (Citing cases)." *Crowell v. Air Lines,* 240 N.C. 20, 34, 81 S.E. 2d 178. The doctrine of primary-secondary liability "is based upon a contract implied in law from the fact that a passively negligent tort-feasor has discharged an obligation for which the actively negligent tort-feasor was primarily liable." *ibid.* If there is an express contract of indemnity, the indemnitee is relegated to his contract, a matter not germane to plaintiff's tort action.

In the instant case there is an express contract between Suggs and Laboratory whereby Suggs undertakes to protect Laboratory from any negligence of Suggs involved in the demolition of the building. Therefore the doctrine of primary-secondary liability does not arise. Furthermore, plaintiff alleges that both defendants were actively negligent. There can be no indemnity among joint *tort-feasors* when both are actively negligent. *Newsome v. Surratt,* 237 N.C. 297, 300, 74 S.E. 2d 732. It is also true that the doctrine of primary-secondary liability does not arise where one defendant alleges sole responsibility of his co-defendant. *Ballinger v. Thomas,* 195 N.C. 517, 522, 142 S.E. 761.

The court did not err in striking paragraph 9 of the Seventh Further Answer and Defense.

(4) In an action against two defendants, as joint *tort-feasors,* may one defendant set up a plea for contribution against the co-defendant and thereby preclude dismissal of the co-defendant during the trial and before judgment (paragraph 10 of Seventh Further Answer and Defense)?

The answer is "No." The question was definitely and clearly decided in *Bell v. Lacey, supra,* in which many decisions of this Court are collected and reviewed. This Court there declared:

"At common law, no right of contribution existed between or among joint tort-feasors who were in *pari delicto.* The right is purely statutory with us and its use necessarily depends upon the terms and provisions of the statute. . . .

"When negligence is joint and several, the injured party may elect to sue either of the joint tort-feasors separately, or any or all of them together. . . .

"When a plaintiff elects to sue one or more joint tort-feasors, but

not all of them, the others are not necessary parties and plaintiff cannot be compelled to pursue them. . . . Nor can an original defendant in such action use G.S. 1-240 to compel plaintiff to join issue with a defendant he has not elected to sue. In such case, if an original defendant avails himself of the provisions of the statute for contribution, he cannot rely upon any liability of the party he has brought in to the original plaintiff, but must recover, if at all, upon the liability of such party to him. . . .

"This Court has uniformly held that where all the joint tort-feasors are brought in by a plaintiff and a cause of action is stated against all of them, such defendants under our statutes, G.S. 1-137 and G.S. 1-138, are permitted to set up in their respective answers as many defenses and counterclaims as they may have arising out of the causes of action set out in the complaint. However, they are not allowed to set up and maintain cross-actions as between themselves which involve affirmative relief not germane to the plaintiff's action. . . . This is so, notwithstanding the fact that the defendants' claim for damages may have arisen out of the same set of circumstances upon which the plaintiff's action is bottomed.

. . . .

"On the other hand, where the plaintiff does not bring his action against all the joint tort-feasors, and an original defendant sets up a cross-action against a third party and has him brought in as an additional defendant, under the provisions of G.S. 1-240, for contribution, such original defendant makes himself a plaintiff as to the additional party defendant. . . .

"Ordinarily, such additional party defendant has no cause of action stated against him except that asserted in the cross-action and set out in the cross-complaint. Hence, the additional party defendant is under no obligation to answer any allegations in the original complaint, but only those alleged against him in the cross-complaint. . . ."

However, when the plaintiff, as in the instant case, proceeds against two or more parties, as joint *tort-feasors*, each is entitled to contribution from the other or others if there is a judgment of joint and several liability against them. G.S. 1-240. But during the course of the trial each is a defendant as to plaintiff only, and neither of them may preclude the dismissal of the other or others if plaintiff fails to make out a *prima facie* case as to them. See *Loving v. Whitton*, 241 N.C. 273, 276, 84 S.E. 2d 919.

That portion of the prayer for relief asking for contribution was properly stricken together with paragraph 10 of the Seventh Further Answer and Defense.

(5) Defendant Suggs moved to strike portions of defendant Laboratory's *original* answer, including paragraphs 5(d) and 11 of the Fifth Further Answer and Defense. This motion was heard before Craven, S.J., 20 September 1960. Judge Craven struck parts of the original answer but did not strike paragraphs 5(d) and 11 of the Fifth Further Answer and Defense. The record does not disclose any exception to Judge Craven's order by defendant Suggs. Laboratory brought these paragraphs forward verbatim in its amended answer, as paragraphs 5(d) and 10 of the Seventh Further Answer and Defense. Suggs again moved to strike these particular paragraphs, among others. They were stricken from the amended answer by Judge Hooks in the order now in controversy.

Defendant Laboratory contends that Judge Hooks had no authority to vacate the order of Judge Craven with respect to the paragraphs in question.

No appeal lies from one superior court judge to another. *Wall v. England,* 243 N.C. 36, 39, 89 S.E. 2d 785. A judge has no power to review a judgment rendered at a former term upon the ground that such judgment is erroneous. *Cameron v. McDonald,* 216 N. C. 712, 715, 6 S.E. 2d 497; *Dail v. Hawkins,* 211 N.C. 283, 284, 189 S.E. 774; *Wellons v. Lassiter,* 200 N.C. 474, 478, 157 S.E. 434. A judge of superior court is without authority to review and vacate orders or judgments, not merely interlocutory, entered in the cause by another judge of superior court. *Cuthbertson v. Burton,* 251 N.C. 457, 459, 111 S.E. 2d 604.

An order or judgment is merely interlocutory if it does not determine the issues but directs some further proceeding preliminary to final decree. Such an order or judgment is subject to change by the court during the pendency of the action to meet the exigencies of the case. But an order or judgment which affects some substantial right claimed by a party may not be modified or vacated by another judge on the ground that it is erroneous. Relief from an erroneous judgment is by appeal to the Supreme Court. *Russ v. Woodard,* 232 N.C. 36, 59 S.E. 2d 351.

In *Wall v. England, supra,* an order striking certain allegations from an answer was entered at term by the presiding judge, with leave to file amended answer or other pleading. No exception was taken. Defendant filed an amendment to his answer. Plaintiff again moved to strike. The court found that the amendment contained the identical matter stricken in the first instance and allowed the motion to strike. Defendant appealed. In holding that defendant was bound by the ruling in the first instance, this Court said: "If the ruling of the Judge of Superior Court were erroneous, the remedy of defendant was to

except thereto and appeal to Supreme Court. And upon failure of defendant to except and appeal the judgment becomes, not so much (as) *res judicata,* as the law of the case."

The ruling of Judge Hooks was legally correct, but erroneous nevertheless. He was without authority to overrule another superior court judge. Even so, the paragraphs in question are inapplicable and should have been stricken in the first instance. The Supreme Court has supervisory jurisdiction over the lower courts and will exercise this jurisdiction in order that the case may be tried on the correct theory below and unnecessary delay in the administration of justice be thereby prevented. Constitution of North Carolina, Article IV, section 8. *Terrace, Inc., v. Indemnity Co.,* 243 N.C. 595, 91 S.E. 2d 584. The order of Judge Hooks with respect to these paragraphs will not be disturbed.

The order of Judge Hooks as to paragraphs 3 and 4 of the Seventh Further Answer and Defense is reversed. In all other respects it is affirmed.

Modified and affirmed.

BOBBITT, J., dissenting in part. In my opinion, paragraph 10 of the Seventh Further Answer and Defense, and paragraph 2 of the prayer for relief, should not have been stricken, and in these respects the order of the court below should be reversed.

In the Court's opinion, this question is posed: "In an action against two defendants, as joint tort-feasors, may one defendant set up a plea for contribution against the codefendant and thereby preclude dismissal of the codefendant during the trial and before judgment (paragraph 10 of the Seventh Further Answer and Defense)?" The Court answers, "No." In my opinion, the correct answer is, "Yes."

In *Bell v. Lacey,* 248 N.C. 703, 104 S.E. 2d 833, cited by the Court, the plaintiff alleged he received personal injuries proximately caused by the collision of an automobile operated by Miss Lucy Lacey and an automobile owned by Vincent Walter Christopher and operated by Larry Cecil Christopher. He sued Miss Lacey and the Christophers, alleging the collision and his injuries were proximately caused by their joint and concurrent negligence. Answering, Miss Lacey denied negligence on her part and alleged, conditionally, in the event she were found negligent, the codefendants Christopher were joint tort-feasors and, under G.S. 1-240, she was entitled to contribution from them in respect of any recovery plaintiff obtained against her.

Miss Lacey's right to allege such cross action for contribution was not challenged.

The Christophers, in reply to Miss Lacy's cross action for con-

tribution, alleged the collision was caused solely by her negligence. Thereafter, they alleged two cross actions against Miss Lacey *for affirmative relief*, one for $300.00 for damages to the Christopher car, the other for $5,000.00 for personal injuries received by the driver thereof.

The hearing was on Miss Lacey's motion to strike the Christophers' said cross actions *for affirmative relief*. Judgment allowing Miss Lacey's said motion was affirmed.

Under *Bell v. Lacey, supra,* and cases cited therein, where two defendants are sued jointly by the plaintiff, neither may allege a cross action against the other *for affirmative relief*. Such a cross action is not germane to the plaintiff's claim. But *Bell v. Lacey, supra,* is not authority for the proposition that a defendant may not allege, conditionally, that his codefendant is a joint tort-feasor from whom, under G.S. 1-240, he is entitled to contribution in respect of any amount plaintiff may recover against him. A recovery by plaintiff is a prerequisite to such cross action.

An original defendant may, under G.S. 1-240, join an additional party and allege, conditionally, a cross action for contribution. At the close of the plaintiff's evidence, the original defendant moves for judgment of nonsuit. The only question then before the court is whether the evidence is sufficient for submission to the jury as between the plaintiff and the original defendant. If the motion is allowed, this ends the case since the cross action for contribution presupposes a recovery by plaintiff against the original defendant. If the motion is overruled, the original defendant may offer evidence. The original defendant's cross action for contribution may not be dismissed until the original defendant has had opportunity to offer evidence in support of such cross action. *Norris v. Johnson,* 246 N.C. 179, 97 S.E. 2d 773. If an original defendant may join an additional defendant and allege such cross action for contribution, I perceive no sound reason why he may not so allege where the codefendant is already a party to the action.

In *Smith v. Kappas,* 218 N.C. 758, 12 S.E. 2d 693, plaintiff sued Kappas and the Straus Company as joint tort-feasors. Over the objection of the Straus Company the court permitted plaintiff, before plaintiff had concluded his evidence, to take a voluntary nonsuit as to Kappas. Straus Company, in its original answer, did not allege, conditionally, it was entitled to contribution from Kappas but made such allegation in an amended answer. The opinion contains this statement: "In the original answer in the present action no demand was made for affirmative relief, but *before the trial* an amended answer was filed by the Straus Company, Inc., which we think sufficient to have

Kappas held as a party defendant under N. C. Code, 1939 (Michie), sec. 618." (Our italics) C.S. 618 is now codified as G.S. 1-240. Based on this factual situation, the court held that, upon Straus' demand for contribution against Kappas, his codefendant, it was error to permit plaintiff to take a voluntary nonsuit as to Kappas and awarded a new trial.

In *Smith v. Kappas,* 219 N.C. 850, 15 S.E. 2d 375, a petition to rehear was allowed on the ground the record did not support the quoted factual statement but showed Straus Company "did not tender its proposed amended answer and move that it be permitted to file the same until after verdict. Nor did it request that Kappas be made a party defendant, as a joint tort-feasor, prior to verdict." On rehearing, the court overruled the exception of Straus Company on the ground it had failed to assert in apt time its alleged cause of action against Kappas for contribution.

In *Canestrino v. Powell,* 231 N.C. 190, 56 S.E. 2d 566, the plaintiff sued the Receivers of the Seaboard Air Line Railway Company and Fred W. Staudt, trading and doing business as Staudt's Bakery, alleging he was injured by the joint and concurring negligence of said defendants. The Receivers' demurrer *to the complaint* was sustained on the ground it did not allege facts sufficient to constitute a cause of action against the Receivers. Upon failure of plaintiff to amend his complaint in respect of allegations against the Receivers, the action, as to the Receivers, was dismissed. Thereafter, Staudt answered, denying negligence and alleging, conditionally, a cross action against the Receivers for contribution; and, upon Staudt's motion, the Receivers were again made parties. The Receivers then demurred to Staudt's cross complaint for contribution. It was held that Staudt's cross complaint did allege facts sufficient to constitute a cause of action for contribution and that the Receivers' demurrer to said cross complaint was properly overruled.

In my opinion, the decisions in *Smith v. Kappas, supra,* and in *Canestrino v. Powell, supra,* are authority for the proposition that where two defendants are sued jointly by the plaintiff, one defendant *may* allege, conditionally, a cross action against his codefendant for contribution. If he elects to do so, the procedure is as follows: If, when plaintiff has rested his case, the evidence is sufficient for submission to the jury as to defendant A (plaintiff in the cross action for contribution) but not as to defendant B, judgment of nonsuit as to *plaintiff's action* against defendant B should then be entered. Even so, the action as to defendant B should not be dismissed. Defendant A should be permitted to offer evidence in support of his cross action against defendant B for contribution. The action as to defendant B

in respect of said cross action for contribution should be dismissed only if defendant A fails to offer evidence sufficient to support the allegations of his cross complaint.

The question considered in *Bell v. Lacey, supra,* was quite different from that here presented. This Court had held in *Norris v. Johnson, supra,* and cases cited therein, that, where the plaintiff sued one defendant and the original defendant joined an additional defendant for contribution under G.S. 1-240, the additional defendant could assert a cross action against the original defendant *for affirmative relief.* In *Bell v. Lacey, supra,* the Court refused to extend this rule to a situation where plaintiff had sued both defendants. Here, we are not concerned with cross actions by one defendant against his codefendant for affirmative relief, that is, for the recovery of damages by the plaintiff in said cross action from the defendant therein, but are concerned only with a cross action for contribution as permitted by G.S. 1-240.

The foregoing is in accord with what I have understood and now understand to be the correct rule and procedure.

PARKER and RODMAN, JJ., concur in dissenting opinion.